## WASHINGTON COUNTY.

FRANCIS B. ARNOLD *vs.* CHARLES H. CHAPMAN, Deputy Sheriff.

In the Statutes of Rhode Island the words "mesne process" denote any process except the final process of a case.

A mortgagee of personalty allowed the mortgagor to remain in possession after the statutory time for redemption at law had elapsed.

*Held*, in the circumstances, that the personalty was still redeemable in equity.

Under Gen. Stat. R. I. cap. 224, § 1, mortgaged personalty lawfully attached on process against the mortgagor cannot be replevied by the mortgagee.

REPLEVIN. Heard by the court, on an agreed statement of facts.

The facts sufficiently appear in the opinion of the court.

*Providence, February* 4, 1882. POTTER, J. The defendant, a deputy sheriff, attached certain personal estate mortgaged by one Francis M. Burton to the plaintiff Arnold, while in the possession of the mortgagor, on a writ issued at the suit of McCrillis, Harris & Company, against the said Burton.

If the property was lawfully attached, the mortgagee could not maintain an action of replevin. See Gen. Stat. R. I. cap. 224, § 1. He is not entitled to possession after it is lawfully attached. To hold so would be to make the right of attachment completely null. His remedy would be to have the property sold and applied to pay his debt, under Gen. Stat. R. I. cap. 197, § 5. The question is, therefore, was the property lawfully attached ?

The plaintiff in replevin maintains that the attachment was not lawful, because the statute, Gen. Stat. R. I. cap. 197, § 4, provides that " Personal estate when mortgaged, and in the possession of the mortgagor, and while the same is redeemable at law or in equity, may be attached on mesne process against the mortgagor, in the same manner as his other personal estate." And he contends that the writ of attachment used in this case is not mesne process.

*First.* We will consider what was the meaning of *mesne process* before the Revision of 1872.

Blackstone Comment. 3, *279, after giving one definition of mesne process as applying to " Any intermediate process which issues pending the suit upon some collateral interlocutory matter, as to summon juries, witnesses, and the like," says, " Mesne process is also sometimes put in contradiction to final process, or process of execution, and then it signifies all such process as intervenes between the beginning and end of a suit."

And to fully understand the latter definition we must recollect that formerly, in England, a suit was not ordinarily begun by a writ of attachment, but by a summons to appear. If the party did not obey this, then a writ issued to attach his goods. The next step to compel appearance was process of distress. Afterwards the statutes provided for a *capias* against the body, in case the former proceedings failed. So that, except in a few actions, the writ of attachment was not the original, but was mesne process in the first sense in Blackstone's definition.

But in Rhode Island this series of writs was never used, but the action could be commenced by writ commanding arrest or attachment, which, while in one sense it was here the original writ, still retained its English name of mesne process.

And it is evident that in all our laws, at least down to 1872,

mesne process was used to denote the process by which a suit was commenced, whether by arrest or attachment, &c. By the Digest of 1822, page 175, "Act for the relief of poor persons imprisoned for debt," § 1, sheriffs are to allow the liberty of the jail yard to all persons imprisoned on mesne process or execution. Did this mean that if a writ of arrest was issued and a man was imprisoned, he could not have the benefit of this act? So in the Digest of 1844, page 168, "Act for the relief of poor persons imprisoned for debt," § 8, persons imprisoned on mesne process or execution may take the poor debtor's oath. So in Rev. Stat. R. I. cap. 198, § 1, Digest of 1857, page 483. So in Digest of 1844, page 117, "Act prescribing the forms of writs," &c., § 15, personal property mortgaged and in the possession of the mortgagor, while the same is redeemable, may be attached on mesne process or execution. So in Rev. Stat. R. I. cap. 181, § 10, Digest of 1857, page 438. It is hardly possible to suppose that they meant that it should not be attached on original writ.

And in the acts relating to the duty of sheriffs in letting to bail persons arrested; Digest of 1822, p. 173, "Act relating to bail on mesne process, in civil actions;" Digest of 1844, p. 151, "Act in relation to bail in civil actions;" Rev. Stat. R. I. cap. 181, Digest of 1857, p. 438, the words original writ, or mesne process are evidently used to signify the same thing. For we must recollect that until 1872 there was no provision for issuing any writ after the first one. There was no mesne process within the meaning contended for by the plaintiff. If a person issued a writ of summons and afterwards wished to attach, he had to discontinue and begin again. And in the language of our old lawyers it is believed that the phrase mesne process was applied to any process by which the suit was commenced. The writ by which the action was commenced still retained its name of mesne process. It is only in this way that the phraseology of our statutes can be reasonably explained.

Did the legislature then in 1872 mean, and without any warning, to change the meaning of a provision which had stood unaltered on the statute book for nearly thirty years? The provision for recording mortgages of personal property was first passed in February, 1834. The provision for attaching mortgaged property

was not passed until 1844, and has been expressed in the same language ever since.

The provision of the statutes upon which plaintiff's counsel relies is Gen. Stat. R. I. cap. 195, § 14, Revision of 1872, p. 452, which provides that if a plaintiff commence his action by summons, he may afterwards have a writ of mesne process to arrest or attach.

This provision is new, but does it use the phrase mesne process in any new sense? The writ here authorized would be mesne process according to either of Blackstone's definitions. It is issued after the first writ, and it is not a part of the final process.

If the legislature had intended to make a new classification of writs, we do not think they would have left Gen. Stat. R. I. cap. 215, § 1, to read as it does read and always has read. And we do not think we are justified in assigning to the phrase " mesne process," in the provision for attaching mortgaged property, a meaning different from what it had always borne, until the question was raised by the very ingenious argument of the plaintiff's counsel in the present case.

If we adopt his construction, we should be obliged to construe the same words in Gen. Stat. R. I. cap. 224, § 1, in the same way, and to hold that goods attached on original writ cannot be replevied ; the action being by the words of the act limited to goods " attached on mesne process, execution, or warrant of distress."

To adopt this new meaning, as now contended for, would compel a person who wished to attach mortgaged property to have a writ of summons served first, and then, perhaps the next moment, to serve a writ of attachment in order to make the latter writ come within the new meaning of *mesne process ;* and by our present statutes, Pub. Laws R. I. cap. 509, § 1, of June 25, 1875, every writ of attachment must also contain a summons. We cannot suppose that the legislature intended to make the process so unnecessarily complicated and expensive.

*Second.* It is contended that the property was not attachable because the time for redemption had expired, and the title had become absolute in the mortgagee.

The mortgage from Burton to Arnold, dated April 22, 1876,

covered the property now replevied, and one mare and one horse, and secured the payment of three notes of $500 each, dated May 13, 1875, June 29, 1875, and April 5, 1876. The notes themselves were given before the date of the mortgage, and were payable on demand after date, with interest payable annually. The condition of the mortgage was to pay the three notes within eighteen months hereof, *i. e.* from the date of the mortgage. Burton was to retain possession until default. If the property was attached, or if Burton sold any of it without written permission, the mortgagee might take possession forthwith. There was a power of sale in case of " default in the payment of either or all of said notes, or of the annual interest thereon."

Burton sold the mare in May, 1876, with the verbal consent of the mortgagee, and replaced it. He sold the horse, September, 1876, without the mortgagee's knowledge. Nothing was paid on the mortgage.

Had the equity of redemption at law expired ? This depends upon the provisions of the mortgage, which are far from being as plain as they might have been made. The defendant contends that the effect of the mortgage was to extend the time of payment of the notes for eighteen months from their dates, but this is inconsistent with the words from the date *hereof*, *i. e.* of the mortgage. The plaintiff contends that the mortgage provides that if the interest be not paid annually, that will be a default. Taking the first provision by itself it would not be plain, but taking it in connection with the words in the power of sale, we think the non-payment of annual interest must be considered a default, and if so, there was a default on May 13, 1876, over six months before the attachment.

Upon the sale of any of the property without consent, the mortgage only provides that the mortgagee might take possession, but he did not. It also provides that on the breach of this condition he might sell, but he did not do it.

And we cannot assent to the position of the plaintiff's counsel that in case of a mortgage made to secure payment of a note by its terms, payable on demand, the note is due immediately without demand, and that therefore a default takes place immediately.

But if sixty days after default had expired at the time of the attachment, so that the right of redemption at law was gone,[1] was it still open in equity? We think it was. There may be many circumstances which would be held in equity to extend the time of redemption, and if the mortgagee suffered the debtor to remain in possession for any considerable time after default, or made no effort to take possession or foreclose, it might be construed as granting a further indulgence to the debtor, which would in equity entitle him to redeem.

And if he had a right to redeem in equity, he might bring his bill for that purpose. This right, however, might be cut off by the mortgagee foreclosing in equity, or by a *bonâ fide* sale of the property at auction, after due notice, or by a sale by agreement. 2 Story Eq. Juris. § 1031. If the mortgage contains a power of sale, that of itself constitutes an agreement, and fixes the mode of sale, which then must be pursued, and the mortgagor thereby consents to the mode and time of notice. In this case neither of these proceedings has been resorted to.

Gen. Stat. R. I. cap. 197, § 8, providing that the attachment shall be dissolved if the attaching creditor does not redeem, or if the property is not sold while redeemable, does not apply in the present case.

We therefore hold that the attachment was lawfully made, and that the mortgagee cannot maintain an action of replevin.

*Judgment for the defendant for costs.*

*Peabody & Crafts,* for plaintiff.

*Browne & Van Slyck* and *Stephen A. Cooke, Jun.,* for defendant.

---

[1] Gen. Stat. R. I. cap. 165, § 11.